Amir Shlesinger (SBN 204132)
ashlesinger@reedsmith.com
Michelle L. Cheng (SBN 239711)
mcheng@reedsmith.com
Charles P. Hyun (SBN 307817)
chyun@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  +1 213 457 8000
Facsimile:   +1 213 457 8080

Attorneys for Defendant Health Care Service Corporation, a mutual legal reserve company, doing business in Illinois as Blue Cross and Blue Shield of Illinois

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| RAMIN M. ROOHIPOUR, M.D., INC., a California corporation; and R&R SURGICAL INSTITUTE, an unincorporated association;<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS, an Illinois Corporation; and DOES 1 through 20, inclusive;<br><br>Defendants. | Case No.:  2:21-cv-06434-DSF-GJS<br><br>**DEFENDANT HEALTH CARE SERVICE CORPORATION'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**<br><br>Date: January 10, 2021<br>Time: 1:30 p.m.<br>Location: Courtroom 7D<br><br>Hon. Dale S. Fischer<br>Removed: August 10, 2021<br>Complaint Filed: April 28, 2021<br>FAC Filed: July 11, 2021<br>SAC Filed: November 22, 2021 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY .....................2

III. LEGAL STANDARD ..........................................................................................6

IV.  ARGUMENT ........................................................................................................6

    A.    Plaintiffs' Breach Of Oral Contract Claim Fails Because There Are No Allegations That HCSC's Verification of Benefits Amount To A Promise Of Payment..........................................................................6

    B.    Plaintiffs' Promissory Estoppel Claim Fails Because Verification of Benefits And Authorization Of Services Do Not Constitute A Definite And Clear Promise ........................................................................9

    C.    Plaintiffs' Intentional And Negligent Misrepresentation Claims Should Be Dismissed As There Was No False Representation..............10

    D.    Plaintiffs' UCL Claim Is Derivative Of Its Other Deficient Claims And Is Insufficiently Tethered To A Legislative Policy And Should Therefore Be Dismissed .........................................................13

V.   CONCLUSION ..................................................................................................15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– i –

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AdTrader, Inc. v. Google LLC*,
   No. 17-CV-07082-BLF, 2019 WL 1767206 (N.D. Cal. Apr. 22, 2019) ................. 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 6

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) ................................................................................. 6

*Banner Entertainment, Inc. v. Super. Ct.*,
   62 Cal. App. 4th 348 (1998) .................................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 6

*Bustamante v. Intuit, Inc.*,
   141 Cal. App. 4th 199 (2006) ................................................................................ 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) .................................................................................. 5, 13

*Champlaie v. BAC Home Loans Servicing, LP*,
   706 F. Supp. 2d 1029 (E.D. Cal. 2009) .............................................................. 12

*Clarke v. Upton*,
   703 F. Supp. 2d 1037 (E.D. Cal. 2010) ................................................................ 6

*Eddy v. Sharp*,
   199 Cal. App. 3d 858 (1988) ............................................................................... 12

*Halvorsen v. Aramark Unif. Servs.*,
   65 Cal. App. 4th 1383 (1998) ................................................................................ 6

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 ........................................................................................................ 13

*Hunter v. Up-Right, Inc.*,
   6 Cal. 4th 1174 (1993) ........................................................................................ 10

*In re Yahoo! Litig.*,
 251 F.R.D. 459 (C.D. Cal. 2008) .................................................................................. 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal. 4th 1134, 63 P.3d 937 (2003) .......................................................................... 14

*Linear Tech. Corp. v. Applied Materials, Inc.*,
 152 Cal. App. 4th 115 (2007) ...................................................................................... 14

*Ledesma v. Corral*,
 2016 U.S. Dist. LEXIS 27368 (C.D. Cal. Mar. 2, 2016) ......................................... 8, 10

*Miller v. Rykoff-Sexton, Inc.*,
 845 F.2d 209 (9th Cir, 1988) ......................................................................................... 6

*Orthopedic Specialists of S. Cal. v. Cal. Pub. Emps. Ret. Sys.*,
 228 Cal. App. 4th 644 (2014) ........................................................................................ 7

*Pac. Bus. Capital Corp. v. Globex Brands, Inc.*,
 2011 U.S. Dist. LEXIS 3335 (C.D. Cal. Jan. 7, 2011) ................................................ 10

*Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*,
 12 Cal. App. 5th 200 (2017) ............................................................................... 2, 7, 10

*Pemberton v. Nationstar Mortg. LLC*,
 331 F. Supp. 3d 1018 (S.D. Cal. 2018) ....................................................................... 12

*Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*,
 715 F. Supp. 2d 1079 (E.D. Cal. 2010) ....................................................................... 13

*Small v. Fritz Cos., Inc.*,
 30 Cal. 4th 167 (2003) ................................................................................................ 10

*Stewart v. Preston Pipeline Inc.*,
 134 Cal. App. 4th 1565 (2005) ...................................................................................... 7

*Taylor v. Cty. of San Bernardino*,
 2011 U.S. Dist. LEXIS 113051 (C.D. Cal. Apr. 12, 2011) ........................................... 8

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*,
 520 F.Supp.2d 1184 (C.D. Cal. 2007) ........................................................................... 7

*U.S. Ecology, Inc. v. State*,
 129 Cal. App. 4th 887 (2005) ........................................................................................ 9

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– iii –

*United States ex rel. Ruhe v. Masimo Corp.*,
   929 F. Supp. 2d 1033 (C.D. Cal. 2012) .................................................................. 11

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*,
   70 Cal. App. 4th 55 (1999) ..................................................................................... 14

*Wall St. Network, Ltd. v. New York Times Co.*,
   164 Cal. App. 4th 1171 (2008) ................................................................................. 6

*Weddington Prods., Inc. v. Flick*,
   60 Cal. App. 4th 793 (1998) ..................................................................................... 7

*Zhang v. Superior Ct.*,
   57 Cal. 4th 364, 304 P.3d 163 (2013) .................................................................... 13

*Zimmerman v. City of Oakland*,
   255 F.3d 734 (9th Cir. 2001) .................................................................................... 6

**Statutes**

Cal. Civ. Code § 1550 ..................................................................................................... 7

Cal. Civ. Code § 1565 ..................................................................................................... 7

Cal. Ins. Code § 41 ........................................................................................................ 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs Ramin M. Roohipour, M.D., Inc. and R&R Surgical Institute ("Plaintiffs") are out-of-network medical providers seeking additional reimbursement from Defendant Health Care Services Corporation ("HCSC"), erroneously sued as Blue Cross Blue Shield of Illinois, for medical services provided to three patients. As out-of-network providers, Plaintiffs do not have a written contract with HCSC and are thus unable to rely on any contractual term or rate of payment in claiming that they are owed additional reimbursement for the services they provided. As a result, Plaintiffs set forth deficient quasi-contract theories, tort theories that are nothing more than a repackaging of those deficient quasi-contract theories, and a claim under Cal. Bus. & Prof. Code § 17200 that fails along with those deficient claims.

This Court previously granted HCSC's motion to dismiss Plaintiffs' First Amended Complaint ("FAC") finding, among other things, that Plaintiffs' contract-based claims failed to allege any *facts* that would allow the Court to infer that HCSC made a promise to Plaintiffs, Plaintiffs' negligent and intentional misrepresenting claims consisted of "bare assertions" that failed to allege falsity with the required particularity under Rule 9(b), and Plaintiffs' claim under Business & Professions Code § 17200 ("UCL") was insufficiently tethered to a legislative policy for purposes of the UCL's "unfair" prong.

Plaintiffs' Second Amended Complaint ("SAC") does not cure any of the deficiencies noted by the Court. Plaintiffs merely swap certain words in the pleading (for example, using the word "assured" instead of "represented") and try to characterize the allegations as a "promise," without actually alleging *facts* to support that characterization. Recognizing that the reference to "allowed amounts" is also too uncertain to support any enforceable contract, Plaintiffs now try to bolster their allegations by adding allegations regarding their unspecified "experience" and "course

of dealing" with HCSC to substantiate *their* belief of what "allowed amount" may mean. Plaintiffs, however, never actually allege that the parties had a meeting of the minds. These superficial amendments simply add nothing to the substance of Plaintiffs' claims.

Plaintiffs inability to shore up their pleading is especially problematic where Plaintiffs' claims are premised entirely on alleged phone calls where all HCSC did was confirm that the three patients at issue were insured and verified their benefit levels. On similar facts, courts have found that a routine insurance verification call—and even medical necessity authorization—does not give rise to an enforceable contract as between a provider and a health plan. *See e.g., Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (*Pacific Bay*), 12 Cal. App. 5th 200 (2017). Accordingly, more is not just warranted, but necessary to maintain a claim.

Plaintiffs' have been given an opportunity to amend but are still unable to state a cause of action. For these reasons, HCSC's motion to dismiss should be granted with prejudice.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are out-of-network medical providers. SAC ¶¶ 7-9. HCSC is a health care company. SAC ¶ 3. Plaintiffs do not participate in HCSC's preferred provider network, nor do they have a written contract with HCSC to be reimbursed for services provided to patients. SAC ¶ 9. Plaintiffs allege that HCSC failed to adequately reimburse them for medical services provided to three patients: Patient A, Patient B, and Patient C. SAC ¶¶ 22, 31, 37, 51, 58.

With respect to services allegedly provided Patient A on January 18, 2019 and February 4, 2019, Plaintiffs alleged in the FAC that the value of medical services provided amounted to $80,000, and that HCSC underpaid for the medical services rendered to Patient A by a total of $75,838.50. FAC ¶¶ 18, 20, 27, 29; SAC ¶¶ 18, 20, 29, 31. In addition to the foregoing, in the SAC, Plaintiffs now allege a new $71,170 facility fee claim that was allegedly underpaid by $68,003.24. SAC ¶ 27.

Plaintiffs allege that the value of medical services provided to Patient B on February 18, 2019 and April 22, 2019 amounted to $395,000, and that HCSC underpaid for these medical services by $395,000.  SAC ¶¶ 37, 38, 43, 46, 49, 52.  Plaintiffs allege that the value of medical services provided to Patient C on February 19, 2019 amounted to $135,000, and that HCSC underpaid for the medical services provided to Patient C by $132,956.97.  SAC ¶¶ 57, 59.

However, with respect to each patient, Plaintiffs merely allege that they placed a routine benefits verification call to HCSC, or confirmed the patient's benefit levels through an "online portal":

- Plaintiffs "called [HCSC] on November 13, 2018, to verify whether PATIENT A was eligible for coverage, to confirm whether PATIENT A's plan offers out-of-network surgery benefits, and if so, to determine the rate at which the plan pays out-of-network claims."  SAC ¶ 15.

- Plaintiffs "called [HCSC] on November 13, 2018, to verify whether PATIENT A was eligible for coverage, to confirm whether PATIENT A's plan offers out-of-network surgery benefits, and if so, to determine the rate at which the plan pays out-of-network claims."  SAC ¶ 24.

- Plaintiffs "called [HCSC] on February 8, 2019, to verify whether PATIENT B was eligible for coverage, to confirm whether PATIENT [B]'s plan offers out-of-network surgery benefits, and if so, to determine the rate at which the plan pays out-of-network claims."  SAC ¶ 35.

- Plaintiffs "called [HCSC] on December 14, 2018, to verify whether PATIENT C was eligible for coverage, to confirm whether PATIENT C's plan offers out-of-network surgery benefits, and if so, to determine the rate at which the plan pays out-of-network claims."  SAC ¶ 54.

With respect to services allegedly provided to Patient B on April 22, 2019, Plaintiffs now concede no call was even made but instead allege that they "accessed *an online portal* on April 18, 2019. . . to verify whether PATIENT B was still eligible for coverage, to confirm whether PATIENT B's plan still offered out-of-network surgery benefits, and if so, to determine the rate at which the plan pays out-of-network claims."  *Compare* SAC ¶ 40 *with* FAC ¶ 39 (alleging that Plaintiffs "called [HCSC] to verify

whether PATIENT B was eligible for coverage, the rate at which the plan reimbursed out-of-network claims, and whether the plan had a per-day max-cap for out-of-network facility fee benefits.").

Plaintiffs then allege that a representative from HCSC verified that each patient was eligible for coverage, provided the level of benefits, and confirmed each patient's remaining deductible and out-of-pocket amounts. *See* SAC ¶¶ 15, 24, 35, 54. With the SAC, Plaintiffs now allege that HCSC "***assured***" (rather than "***represented***") that the patients were eligible for coverage (*compare* SAC ¶¶ 15, 24, 35, 54 *with* FAC ¶¶ 15, 24, 33, 54), and confirmed the effective date of the patient's coverage and the type of surgery that was being covered. *Id.* With respect to services allegedly provided to Patient B on April 22, 2019, Plaintiffs allege that the "website stated PATIENT B had active coverage, that the plan pays out-of-network ambulatory service center facility fee claims at 50% per visit, that no pre-authorization was required, and that PATIENT B's remaining deductible and out-of-pocket amounts were $3,445.91 and $14,095.91 respectively." SAC ¶ 40.

The SAC also now alleges that Plaintiffs past "experience" leads them to believe HCSC allegedly pays claims "at a percentage of the 'Allowable' amount, which equates to the Usual, Customary, and Reasonable rate ('UCR')." SAC ¶ 10. But nowhere do they allege that HCSC promised to pay Plaintiffs UCR or any other rate for the services at issue.

On October 21, 2021, this Court granted HCSC's motion to dismiss the FAC, granting leave to amend, but declining to grant leave to add new defendants or new claims. Dkt. 16 at 13. In dismissing Plaintiffs' first and second causes of action for breach of contract and promissory estoppel, the Court found that "Plaintiffs do not allege HCSC made a promise to pay at the rates determined during the verification calls" and noted that while "Plaintiffs need not have used the word 'promise' in their allegations, *they have failed to allege facts that*, taken as true, allow the Court to infer

– 4 –

that HCSC made a promise to Plaintiffs." Dkt. 16 at 8 (emphasis added). And while the Court acknowledged allegations regarding "the existence of documents memorializing the information conveyed by representatives of HCSC on the verification calls," the Court noted that "Plaintiffs do not allege additional details about the contents of those documents that would allow the Court to infer that HCSC agreed to be bound by the terms allegedly conveyed in the verification calls." Dkt. 16 at 8.

The Court dismissed Plaintiffs' third and fourth causes of action for negligent and intentional misrepresentation for similar reasons. The Court found that Plaintiffs' "bare assertions" that "HCSC misrepresented it would pay Plaintiffs the rates that HCSC conveyed during the verification calls because the resulting coverage was allegedly inconsistent with what HCSC communicated during those calls. . . do not state with particularity the alleged falsity." Dkt. 16 at 10. The Court further found that "Plaintiffs' allegations lack key facts to support the claim that HCSC made a misrepresentation." Dkt. 16 at 10. In particular, the Court pointed to Plaintiffs' failure to allege "the amount of the maximum allowable rate" or "that HCSC provided them with an inaccurate rate." Dkt. 16 at 10.

With respect to Plaintiffs' fifth cause of action, based on Plaintiffs' own opposition argument, the Court found that their UCL claim was based on the "unfair" and "fraudulent" prongs (Dkt. 16 at 11), and that Plaintiffs failed to state a claim under the "unfair" prong because it was not "sufficiently 'tethered' to a legislative policy" under *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999). Dkt. 16 at 12. The Court found that the UCL claim failed under the "fraudulent" prong because Plaintiffs' underlying fraud claims failed. Dkt. 16 at 12.

On November 22, 2021, Plaintiffs filed their SAC which asserts the same causes of action as alleged in the FAC: (1) breach of oral contract; (2) promissory estoppel; (3) intentional misrepresentation; (4) negligent misrepresentation; and (5) violation of Business and Professions Code § 17200, et. seq. SAC ¶¶ 60-97.

## III. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted if, when taking the allegations in the complaint as true, the plaintiff fails to state a claim upon which relief can be granted. *See Zimmerman v. City of Oakland*, 255 F.3d 734, 757 (9th Cir. 2001) (internal citations omitted). A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). While facts alleged in a complaint must be accepted as true, legal conclusions are not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Where "there is no set of facts that can be proved under the amendment that would constitute a valid claim," leave to amend is not warranted. *Clarke v. Upton,* 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010) (citing *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir, 1988)).

## IV. ARGUMENT

### A. Plaintiffs' Breach Of Oral Contract Claim Fails Because There Are No Allegations That HCSC's Verification of Benefits Amount To A Promise Of Payment

To state a cause of action for breach of contract, a plaintiff must allege: (1) the existence of a contract and its terms; (2) plaintiff's performance or excuse for nonperformance; (3) breach by defendant; and (4) that the breach caused plaintiff's harm. *Wall St. Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008). A contract is not enforceable if its terms are too uncertain. *Halvorsen v. Aramark Unif. Servs.*, 65 Cal. App. 4th 1383, 1389 (1998) ("An alleged oral contract with vague and uncertain terms is not binding."). The terms of the alleged contract must be certain enough to "provide a basis for determining the existence of a breach and for

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

giving an appropriate remedy." *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998). Furthermore, the formation of a contract contracts requires mutual assent "[c]ommunicated by each to the other." Cal. Civ. Code §§ 1550, 1565; *see also Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (a valid contract must contain mutual promises). "[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed to some terms, or have taken some action related to the contract." *Banner Entertainment, Inc. v. Super. Ct.*, 62 Cal. App. 4th 348, 359 (1998); *see also Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006).

It is well established that, in the healthcare space, verification of insurance, coverage, and authorization of services, and a provider's understanding or expectation of payment alone, cannot support any cause of action. *See Pacific Bay Recovery, Inc.*, 12 Cal. App. 5th at 216. Indeed, courts recognize that the authorization process, alone, cannot support a claim for a breach of contract because an authorization of care cannot be construed as a promise to pay. Authorization is merely "the process in which the health insurer confirm[s] that the treatment requested [is] medically necessary and appropriate." *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184, 1193 (C.D. Cal. 2007). However, authorization is not "an agreement to pay or a guarantee to pay for medical services provided to an insured." *Id.*; *see also Orthopedic Specialists of S. Cal. v. Cal. Pub. Emps. Ret. Sys.*, 228 Cal. App. 4th 644, 649 (2014) (finding that no oral promise existed between the parties where health plan authorized treatment and stated that the provider would be paid for treatment).

Instead, as this Court recognized, to support a claims for oral contract, Plaintiffs must allege that "HCSC made a promise to Plaintiffs." Dkt. 16 at 8. Further, the Court explained that Plaintiffs need not use the word "promise," but what is important is that they "allege facts" to support an inference of a promise to pay Plaintiffs a specific amount. Dkt. 16 at 8.

Plaintiffs have failed to heed the Court's order, presumably because they cannot. Instead of alleging additional *facts* to support an inference of a promise, Plaintiffs merely replace the word "represented" with "assured" in their pleading (*see* SAC ¶¶ 15, 16, 17, 24, 25, 26, 35, 36, 41, 42, 54, 55, 56, 61, 63, 75, 90, 91, 92) and then proceed to characterize this allegation—which the Court already found is not tantamount to a promise to pay Plaintiffs—to be a promise to pay. *See Ledesma v. Corral*, 2016 U.S. Dist. LEXIS 27368, at *8 (C.D. Cal. Mar. 2, 2016) ("The Court hardly sees how the SAC's additional phrasing provides the requisite meat for the FAC's skeletal copyright claims; merely reciting the magic words of a cause of action is insufficient to survive a motion to dismiss.") "[A]fter *Twombly* and *Iqbal*, conclusory allegations that merely recite the elements of a [] claim are not enough; plaintiff must allege specific facts giving rise to a plausible [] claim." *Taylor v. Cty. of San Bernardino*, 2011 U.S. Dist. LEXIS 113051, at *13 (C.D. Cal. Apr. 12, 2011). Plaintiffs' veiled attempt to have this Court reconsider its prior findings should be seen for what it is, and rejected.

Simply put, there are no factual allegations that HCSC made any *promise of payment*, which is always subject to actual plan terms. Indeed, Plaintiffs' contract claim is premised exclusively on allegations that Plaintiffs confirmed with HCSC that the patients had health care coverage during routine calls to check insurance benefits and that no pre-authorization was needed. SAC ¶¶ 15, 16, 24, 25, 35, 41, 54, 55 (alleging that HCSC quoted the "out-of-network claims at [50% or] 60% of the Allowable (i.e., UCR) rate"). But, the SAC is devoid of any new *facts* (as opposed to additional words) that give rise to a breach of contract claim.

While Plaintiffs allege additional details about the information that was supposedly conveyed by HCSC (such as the effective date of coverage and type of surgery covered), Plaintiffs do not allege any new facts "that would allow the Court to infer the HCSC agreed to be bound by the terms allegedly conveyed in the verification calls." Dkt. 16 at 8. Nor does Plaintiffs' purported "experience" that "Allowable

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 8 –

amount" often equates to UCR support any inference of a promise to pay. SAC ¶ 10. Even if true, the fact that HCSC quoted out-of-network benefits at 50% or 60% of the "allowable amount" or UCR, does not equate to HCSC's promise to pay or to pay a specific amount.

Without specific allegations of facts giving rise to an oral contract, there can be no contract between Plaintiffs and HCSC as a matter of law. Accordingly, this Court should dismiss Plaintiffs' cause of action for breach of oral contract with prejudice.[1]

## B. Plaintiffs' Promissory Estoppel Claim Fails Because Verification of Benefits And Authorization Of Services Do Not Constitute A Definite And Clear Promise

To state a claim for promissory estoppel, a plaintiff must allege that (1) the defendant made a promise that is definite and clear; (2) the plaintiff reasonably relied on the promise; and (3) the plaintiff suffered substantial detrimental effect as a result of the reliance. *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (2005).

Plaintiffs' cause of action for promissory estoppel, just like Plaintiffs' oral contract claim, relies on a conclusory characterization of their allegations that HCSC "represented" Plaintiffs "would be paid for services rendered" a certain percentage of allowable amounts, which is not supported by the actual facts alleged. As noted in Section IV.A, *supra*, Plaintiffs merely allege that HCSC verified that each patient was eligible for coverage, each patient's plan out-of-network benefits, and each patient's remaining deductible and out-of-pocket amounts. SAC ¶¶ 15, 16, 24, 25, 35, 41, 54, 55. This is not a sufficiently clear and unambiguous promise that could give rise to a promissory estoppel cause of action. *See Pacific Bay Recovery, Inc.*, 12 Cal.App.5th at 215 n.6 (noting that similar allegations did not state cause of action for promissory

---

[1] In the SAC, Plaintiffs newly alleges a claim based on a $71,170 facility fee that was allegedly underpaid by $68,003.24. SAC ¶ 27. In dismissing the FAC, the Court *did not* grant leave to add new claims. Dkt. 16 at 13. Accordingly, at a minimum, the Court should dismiss any claims based on the new $71,170 facility fee claim.

estoppel because the complaint did not allege a clear and unambiguous promise). For the same reasons discussed above, Plaintiffs' recitation of "magic words" (i.e., substituting "assured" for "represented" and using the word "promise") does not change that result. *See Ledesma*, 2016 U.S. Dist. LEXIS 27368, at *8. Further, given the ambiguous nature of the alleged promise, any reliance on the representations would necessarily be unreasonable.

Accordingly, because Plaintiffs have not alleged a definite and clear promise, or reasonable reliance, Plaintiffs' cause of action for promissory estoppel fails as a matter of law and should be dismissed with prejudice.

## C. Plaintiffs' Intentional And Negligent Misrepresentation Claims Should Be Dismissed As There Was No False Representation

Plaintiffs' intentional and negligent misrepresentation claims are premised on the same allegations as their deficient contract-based claims, and therefore fail for this reason alone. *See* SAC ¶¶ 75, 83; *see also Pac. Bus. Capital Corp. v. Globex Brands, Inc.*, 2011 U.S. Dist. LEXIS 3335, at *6 (C.D. Cal. Jan. 7, 2011) (declining to enter default judgment on fraud claim because it was merely "an attempted repackaging of [plaintiff's] breach of contract claim").

Moreover, Plaintiffs fail to allege a prima facie claim. To establish a cause of action based in fraud or misrepresentation, a plaintiff must show: (1) misrepresentation (false representation or concealment); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Hunter v. Up-Right, Inc.*, 6 Cal. 4th 1174, 1184 (1993). The tort of negligent misrepresentation has similar elements except that it "does not require scienter or intent to defraud." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003). And, "[c]laims for fraud, including concealment, intentional misrepresentation and negligent misrepresentation must be pleaded with particularity under Rule 9(b)." *United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1036 (C.D. Cal. 2012).

Here, Plaintiffs' fraud claims rest on allegations that HCSC purportedly misrepresented how the claims at issue would be paid. As a preliminary matter, this claim fails because, as established above, there are no allegations that HCSC made any representation regarding payments to Plaintiffs. Furthermore, Plaintiffs' claim is premised on their *own* belief that the amount of payment is inconsistent with *their* expectation based on *their* experience. Specifically, Plaintiffs allege that based on their unspecified prior "experience," HCSC pays "Allowable" rates at what *Plaintiffs* consider UCR and which Plaintiffs define in a particular way. But, there are no allegations whatsoever that HCSC ever stated to Plaintiffs what the "Allowable rate" for the claim at issue would be based on or how derived. Plaintiffs' own unexpressed expectation of payments does not support a claim that HCSC made any misrepresentation about the level of benefits.

Plaintiffs' reliance on post-service appeal communications does not change this conclusion. For example, Plaintiffs allege that in post-service appeal correspondence, HCSC stated that pricing is based on "rates that are accepted by providers that do participate in Anthem networks." SAC ¶ 30. Even if true, there are no facts to support an inference that this statement is inconsistent with any alleged pre-service communications. Indeed, precisely because there was no discussion or representation as to how or what Allowable rate means during the alleged verification calls (and therefore no basis for a contract either), Plaintiffs cannot complain that they were misled based on their own expectations and some undisclosed prior "experience."[2] As the Court found in dismissing the FAC, Plaintiffs' allegations in this regard amount to nothing more than "bare assertions." Dkt. 16 at 10.

Furthermore, beyond the conclusory allegation that HCSC "either knew that the

---

[2] Notably, Plaintiffs' contention that a different pricing methodology was used than what Plaintiffs expected would be used does not, without more, support a fraud claim because there are no allegations that the methodologies would result in different payments and therefore there is no allegation of actual damages.

representations were false or made the representations recklessly" (SAC ¶ 77), Plaintiffs fail to make any factual allegations supporting any inference that HCSC acted with knowledge or intent. Thus, Plaintiffs' intentional misrepresentation claim would nevertheless fail as it fails to meet even the basic pleading standard of Rule 8(a). *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1046 (S.D. Cal. 2018) ("[p]laintiffs must still plead facts establishing scienter with the plausibility standard required under Rule 8(a)").

Additionally, the SAC is devoid of any factual allegations supporting justifiable reliance. As with their deficient scienter allegations, Plaintiffs merely recite the elements of fraud in conclusory fashion, alleging that "Plaintiffs reasonably relied on Defendant's representations." SAC ¶ 79. Conclusory allegations of reliance are insufficient to meet the specificity require by Rule 9(b). *See Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1058 (E.D. Cal. 2009).

Finally, Plaintiffs' negligent misrepresentation claim fails for the additional reason that Plaintiffs fail to allege the existence of a legal duty owed by HCSC. As with any negligence claim, negligent misrepresentation further requires "the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person." *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988).

Plaintiffs' allegations do not meet the basic pleading requirements under Rule 8(a), and they certainly do not meet the heightened pleading requirements under Rule 9(b). Accordingly, the third and fourth causes of action must be dismissed with prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)

### D. Plaintiffs' UCL Claim Is Derivative Of Its Other Deficient Claims And Is Insufficiently Tethered To A Legislative Policy And Should Therefore Be Dismissed

In dismissing the UCL claim under the "unfair" prong in the FAC, the Court found that under the *Cel-Tech* test, Plaintiffs failed to identify any conduct that is "sufficiently 'tethered' to a legislative policy for the purposes of the unfair prong." Dkt. 16 at 12 (citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857 at 866 (citing *Cel-Tech*, 20 Cal. 4th at 187). In an attempt to cure this pleading defect, Plaintiffs now purport to base their UCL claim on HCSC's alleged violation of California Insurance Code §§ 780 and 790.03. SAC ¶¶ 91-93. Plaintiffs' attempt is unavailing.[3]

It is well-settled that "California law does not provide a private right of action for violations of California Insurance Code section 780 or the attendant regulations." *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079, 1091 (E.D. Cal. 2010). For that reason, "[i]n order to state a claim under California Business and Professions Code section 17200 et seq. based on an insurer's conduct, a plaintiff must allege something more than a mere violation of the California Insurance Code." *Id.* Furthermore, "[p]rivate UIPA actions are absolutely barred; a litigant may not rely on the proscriptions of section 790.03 as the basis for a UCL claim." *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 384, 304 P.3d 163, 177 (2013). To the extent Plaintiffs UCL claim is based on the "fraudulent" prong, Plaintiffs' claim fails because, as discussed above, they fail to state a claim for fraud.

In addition to the above—which is dispositive—Plaintiffs' UCL claim fails for two additional reasons. First, Plaintiffs lack standing to assert a claim under UCL. Under California precedent, a claim under Section 17200 can only be brought by a

---

[3] As an out-of-state entity, HCSC is arguably not even subject to the California Insurance Code. *See* Cal. Ins. Code § 41 ("All insurance in this State is governed by the provisions of this code.").

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)

competitor or a consumer. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007). Here, Plaintiffs do not allege whether they are competitors or consumers. Given that Plaintiffs are healthcare providers whereas HSCS is a health insurance company, Plaintiffs are obviously not competitors. And even if Plaintiffs had alleged that they are consumers, the protections of the UCL are reserved only for "powerless" and "unwary consumers." Here, Plaintiffs are a medical corporation and a surgery center. In fact, Plaintiffs go so far as to allege that "R&R is a state-of-the-art ambulatory surgery center recognized by the Accreditation Association for Ambulatory Health Care." SAC ¶ 6. Given the sophistication of Plaintiffs, they lack standing to assert a claim under UCL. *See In re Yahoo! Litig.,* 251 F.R.D. 459, 475 (C.D. Cal. 2008); *AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2019 WL 1767206, at *10 (N.D. Cal. Apr. 22, 2019).

Second, given that Plaintiffs are seeking additional reimbursement for the medical services provided to the patients, the only remedy available to Plaintiffs is compensatory damages. The UCL, however, does not allow for the recovery of compensatory damages and only provides for equitable relief. *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 67 (1999). While Plaintiffs purportedly seek restitution as well (SAC, Prayer ¶ 2), this is clearly not a case where restitution is an appropriate remedy. In the UCL context, "an order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149, 63 P.3d 937, 947 (2003). Here, HCSC is not alleged to have taken any property that Plaintiffs had an ownership interest in. Plaintiffs merely seek additional payment. As a result, there is no money or property to "return" to Plaintiffs, and the remedy of restitution is therefore unavailable.

For these reasons, the fifth cause of action should be dismissed with prejudice.

## V. CONCLUSION

Based on the foregoing reasons, HCSC respectfully requests that Plaintiffs' SAC be dismissed with prejudice.

DATED: December 6, 2021

REED SMITH LLP

By: */s/ Amir Shlesinger*
Amir Shlesinger
Michelle L. Cheng
Charles P. Hyun
Attorneys for Defendant Health Care Service Corporation, a mutual legal reserve company, doing business in Illinois as Blue Cross and Blue Shield of Illinois