ALYSSA MILMAN WHITE, ESQ. (SBN 160212)
alyssa@angelowhitelaw.com
SARA L. ESCALANTE, ESQ. (SBN 323127)
sara@angelowhitelaw.com
**ANGELO & WHITE**
A Professional Corporation
610 Newport Center Drive, Suite 1200
Newport Beach, CA 92660
Telephone:  (949) 640-0800
Facsimile:   (949) 640-0887

Attorneys for Plaintiffs Ramin M. Roohipour, M.D., Inc., and R&R Surgical
Institute

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| RAMIN M. ROOHIPOUR, M.D., INC., a California corporation; and R&R SURGICAL INSTITUTE, an unincorporated association;<br><br>Plaintiffs,<br><br>v.<br><br>BLUECROSS BLUESHIELD OF ILLINOIS, an Independent Licensee of the Blue Cross and Blue Shield Association; and DOES 1 through 20, inclusive;<br><br>Defendants. | Case No.: 2:21-cv-06434-DSF-GJS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)6**<br><br>Date: January 10, 2022<br>Time: 1:30 p.m.<br>Location: Courtroom 7D<br><br>Hon. Dale S. Fischer<br>Removed: August 10, 2021<br>Complaint Filed: April 28, 2021<br>SAC Filed: November 22, 2021 |

# TABLE OF CONTENTS

I.   Introduction ...................................................................... 1

II.   Statement of Facts ........................................................... 2

III.   Legal Standard ................................................................. 3

IV.   Argument ......................................................................... 3

   A. Plaintiffs' Breach of Oral Contract is Adequately Pled .................. 3

      1. The SAC Alleges Definite Terms & Objective Manifestations of Mutual Assent Sufficient to Establish Contract Formation ............ 3

      2. Whether Verification of Benefits & Preauthorization Establishes a Binding Contract Must Be Decided on a Case-by-Case Basis ......... 5

   B. Plaintiffs' Promissory Estoppel is Adequately Pled ...................... 9

   C. Plaintiffs' Misrepresentation Claims are Adequately Pled .............. 11

   D. Plaintiffs' Claim for Violation of UCL is Adequately Pled ............. 13

V.   Conclusion ....................................................................... 16

i

# Table of Authorities

## Cases

Ashcroft v. Iqbal (2009)

    556 U.S. 662 .................................................................................. 3

Bay City Surgery Center, Inc. v. ILWU-PMA Welfare Plan Board of Trustees,

    No. CV-15-06209-MWF-AFM,

    2016 WL 11185297, (C.D. Cal. Mar. 25, 2016) ........................ 12, 13

Bell Atlantic Corp. v. Twombly (2007)

    550 U.S. 544 .................................................................................. 3

Blaustein v. Burton (1970)

    9 Cal.App.3d 161 .......................................................................... 4

Bly-Magee v. California (9th Circ. 2001)

    236 F.3d 1014 ............................................................................... 13

Bristol SL Holdings, Inc. v. Cigna Health Life Ins., Co.,

    No. SACV 19-00709 AG (ADSx),

    2020 U.S. Dist. LEXIS 76342, 2020 WL 2027955

    (C.D. Cal. Jan. 6, 2020) ............................................................... 8, 9

C & K Eng'g Contractors v. Amber Steel Co. (1978)

    23 Cal.3d 1 .................................................................................... 9

California Sch. Employees Assn. v. Sunnyvale Elementary Sch. Dist. (1973)

    36 Cal.App.3d 46 .......................................................................... 4

California Spine & Neurosurgery Institute v. United Healthcare Services,

    No. 18-CV-2867 PSG (AFM), 2018 U.S. Dist. LEXIS 225961*,

    2018 WL 6074567, at *8-*13 (C.D. Cal. June 28, 2018) .............. 5, 6,

    9, 10

Cf. Linear Technology Corp. v. Applied Materials, Inc. (2007)

    152 Cal.App.4th 115 ..................................................................... 14

**Table of Authorities (Cont.)**

<u>Cases (Cont.)</u>

Daniels v. Select Portfolio Servicing, Inc. (2016)

    246 Cal.App.4th 1150 ............................................................. 3, 4

Engalla v. Permanent Medical Group, Inc. (1997)

    15 Cal.4th 951 ............................................................. 11, 12

In re Out of Network Substance use Disorder Claims Against Unitedhealthcare,

    No. SACV 19-2075 JVS (DFMx) 2020 U.S. Dist.

    LEXIS 81195*, 2020 WL 2114934, (C.D. Cal. Feb. 21, 2020) ............... 8

Kennecott Corp. v. Union Oil Co. of California (1987)

    196 Cal.App.3d 1179 ............................................................. 4

Korea Supply Co. v. Lockheed Martin Corp. (2003)

    29 Cal.4th 1134 ............................................................. 14, 15

Lazy Y Ranch Ltd. v. Behrens (9th Cir. 2008)

    546 F.3d 580 ............................................................. 3

McKell v. Wash. Mut. Inc. (2006)

    142 Cal.App.4th 1457 ............................................................. 13

Morris B. Silver M.D., Inc. v. International Longshore and Warehouse Union-

    Pacific Maritime Association Welfare Plan (2016)

    206 Cal.App.5th 793 ............................................................. 10, 11

Orthopedic Specialists of S. Cal. v. Cal. Pub. Emps. Ret. Sys. (2014)

    228 Cal.App.4th 644 ............................................................. 7, 8

Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc. (2017)

    12 Cal.App.5th 200 ............................................................. 6, 7

Platt v. Union Packing Co. (1939)

    32 Cal.App.2d 329 ............................................................. 5

iii

**Table of Authorities (Cont.)**

Cases (Cont.)

Rosenbluth Int'l v. Superior Court (2002)

    101 Cal.App.4th 1073 ..................................................................... 15

Small v. Fritz. Cos., Inc. (2003)

    30 Cal.4th 167 ............................................................................. 11

Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co. (C.D. Cal. 2007)

    520 F.Supp.2d 1184 ..................................................................... 6, 7

Vess v. Ciba-Geigy Corp. USA (9th Cir. 2003)

    317 F.3d 1097 ............................................................................. 11

California Statutes

Business and Professions Code § 17200 .................................................... 13

Business and Professions Code § 17203 .................................................... 15

Business and Professions Code § 17204 .................................................... 13

Code of Regulation § 1300.71(3)(B)      10

Other Authorities

Federal Rule of Civil Procedure 8(a)(2) ................................................... 3

Federal Rule of Civil Procedure 9(b) ...................................................... 12

Federal Rule of Civil Procedure 12(b)(6) ................................................. 3

iv

## I.      INTRODUCTION

Of great importance to this case is understanding the commercial realities of the industry at issue, which is out-of-network medical services. It is customary in the healthcare industry for out-of-network providers, such as Plaintiffs, to seek pre-service assurances from insurance companies, like Defendant, regarding coverage, payment rates, and whether proposed services require preauthorization or other conditions precedent.

Plaintiffs R&R Surgical Institute and Ramin M. Roohipour, M.D., Inc. are out-of-network medical providers that rendered medically necessary surgical services to three of Defendant Blue Cross Blue Shield of Illinois' insureds. Prior to treatment, Plaintiffs and Defendant communicated about the rate of payment, type of treatment, and whether the proposed surgical procedures for each patient required preauthorization. Plaintiffs rendered treatment with the expectation that they would be paid at the rate quoted pre-service, and in reliance on Defendant's representations that the services did not require preauthorization.

Plaintiffs' Second Amended Complaint ("SAC") alleges Defendant breached the oral agreements when it failed to pay at the quoted rate and denied services as "not covered" despite assurances otherwise. The SAC includes causes of action for breach of oral contract, promissory estoppel, intentional and negligent misrepresentation, and violation of Business & Professions Code section 17200 et seq., known as California's unfair competition law, ("UCL").

Defendant's Motion to Dismiss should be denied because the SAC's new allegations regarding verification of benefits and preauthorization communications between Plaintiffs and Defendant establish definite contractual terms, objective manifestations of mutual assent, and reasonable reliance. However, if the Court finds any of the allegations insufficient to state the asserted causes of action, Plaintiffs respectfully request leave to amend because amendment would not be futile.

1

## II.     STATEMENT OF FACTS

Plaintiffs R&R Surgical Institute and Ramin M. Roohipour, M.D., Inc. ("Plaintiffs") are out-of-network medical providers, which means neither participates in Defendant Blue Cross Blue Shield of Illinois' ("Defendant") preferred provider network or has a written contract with Defendant to be reimbursed for services based on a negotiated fee structure rate. (SAC ¶ 8.)

Plaintiffs have provided surgical and other healthcare services to individuals insured by Defendant since 2018. (SAC ¶ 10.) In Plaintiffs' experience, Defendant pays out-of-network claims at a percentage of the "Allowable" amount, which equates to the Usual, Customary, and Reasonable rate ("UCR"), and is defined as the amount paid for a medical service in a geographic area based on what providers in the area usually charge for the same or similar medical service. (*Id.*) Over the course of dealing, and specifically as to the claims at issue in this lawsuit, Defendant has acknowledged in written correspondence that its "allowed" amount is the same as the UCR rate. (*Id.*)

As is custom in the business of out-of-network services, it is Plaintiffs' pattern and practice to first contact an insurance company to verify a patient's eligibility and to obtain pre-authorization, if required. (SAC ¶ 11.) Plaintiffs ultimately render services in reliance on the insurance company's pre-service representations. (SAC ¶ 12.) Plaintiffs contend that Defendant failed to reimburse the claims for services rendered to PATIENTS A-C in accordance with their pre-service assurances. (SAC ¶¶ 22, 33, 38, 52, & 59.)

The SAC includes new allegations regarding not only Plaintiffs' prior course of dealing with Defendant, but also adds facts about the date of each verification phone call and other terms discussed during those calls, including the type of out-of-network surgery benefits offered under each plan. (SAC ¶¶ 15, 24, 35, 40, 54.) Moreover, the SAC includes additional details regarding the preauthorization phone

2

1    calls, including that Plaintiffs provided Defendant with the specific Current

2    Procedural Terminology ("CPT") codes for each proposed procedure, as well as the

3    diagnosis codes for each patient, where the outpatient care was to be performed, and

4    by which doctor. (SAC ¶¶ 16, 25, 41, 55.)

5         These new facts allow the Court to infer that Defendant agreed to be bound

6    by the terms conveyed in the verification and preauthorization phone calls because

7    the information discussed goes well beyond a call to confirm whether the patients

8    merely had healthcare coverage.

9    **III.   LEGAL STANDARD**

10        A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6)

11   where the pleadings fail to state a claim upon which relief can be granted. The

12   Court's "inquiry is limited to the allegations in the complaint, which are accepted as

13   true and construed in the light most favorable to the plaintiff." (*Lazy Y Ranch Ltd. v.*

14   *Behrens* (9th Cir. 2008) 546 F.3d 580, 588.)

15        Even under the liberal pleading standard of Federal Rule of Civil Procedure

16   8(a)(2), a plaintiff must not merely allege conduct that is conceivable but must

17   instead allege "enough facts to state a claim to relief that is plausible on its face."

18   (*Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570.) "A claim has facial

19   plausibility when the plaintiff pleads factual content that allows the court to draw

20   the reasonable inference that the defendant is liable for the misconduct alleged."

21   (*Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678 (citing *Twombly*, 550 U.S. at 556).)

22   **IV.   ARGUMENT**

23        **A.   Plaintiffs' Breach of Oral Contract is Adequately Pled.**

24             ***1.   The SAC Alleges Definite Terms & Objective Manifestations of***

25             ***Mutual Assent Sufficient to Establish Contract Formation.***

26        The terms of a contract are reasonably certain if they provide a basis for

27   determining the existence of a breach and for giving an appropriate remedy. (*Daniels*

28

3

*v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1174.) Generally, an indefinite term will not stop a court from enforcing a contract, provided that the court can imply a definite term. (*See California Sch. Employees Assn. v. Sunnyvale Elementary Sch. Dist.* (1973) 36 Cal.App.3d 46, 71 ["a court will enforce even an indefinite contract if it is capable of being identified and rendered definite"].)

Here, the SAC identifies the parties to the contract as out-of-network medical providers on the one hand and a health insurance payor on the other. The SAC establishes that the purpose of the contract is the provision of out-of-network surgical services. Finally, the SAC sets forth payment terms, namely: Defendant confirmed it offers out-of-network coverage for surgical services rendered to Patients A-C, and that those services are paid at either 60% (PATIENTS A, C) or 50% (PATIENT B) of the Allowable rate, after each patients' deductible was met. Plaintiffs provided Defendant with the diagnostic codes and proposed surgical procedures for each patient and Defendant assured Plaintiffs that none of the surgeries required preauthorization.

The terms of the contract, as alleged, are therefore reasonably certain enough to provide a basis for determining the existence of a breach (failing to pay at the rate quoted pre-service) and the appropriate remedy (difference between rate quoted pre-service and the rate paid post-service).

Moreover, the making of an agreement may be inferred by proof of conduct as well as by proof of the use of words. (*Blaustein v. Burton* (1970) 9 Cal.App.3d 161, 184.) In fact, the "conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions." (*Kennecott Corp. v. Union Oil Co. of California* (1987) 196 Cal.App.3d 1179, 1189.)

Here, Plaintiffs' pattern and practice is to first contact Defendant to verify the patients' insurance eligibility and preauthorization requirements, as is custom in the

4

business of out-of-network services. (SAC ¶¶ 61-62.) After obtaining these assurances from Defendant, Plaintiffs accepted Patients A-C for treatment and performed in accordance with the oral contracts by rendering the proposed surgical procedures and sending the claims to Defendant. (SAC ¶¶ 63.) Defendant partially performed by accepting the claims and requesting necessary documentation from Plaintiffs to process the claims. (SAC ¶¶ 18, 20, 27-32, 37, 43-51, 57-58.) However, Defendant ultimately breached the agreement by failing to pay at the pre-service represented rates (SAC ¶ 65) and by denying certain claims as "not covered," despite pre-service representations that proposed services did not require preauthorization. (SAC ¶¶ 45, 48, & 51-52.)

The parties' words, acts, conduct, and history of dealing, as alleged, are therefore sufficient to establish objective manifestations of mutual assent. (*Platt v. Union Packing Co.* (1939) 32 Cal.App.2d 329, 333 [The intention of contracting parties must be determined by their words, acts, conduct and the circumstances existing at the time the agreement was brought into being.].)

As further addressed below, the parties' opposing interpretations of whether verification of benefits and preauthorization of services constitute a binding contract raises a question of fact, which should not be decided on a Motion to Dismiss.

## 2. *Whether Verification of Benefits & Preauthorization Establishes a Binding Contract Must Be Decided on a Case-by-Case Basis.*

Courts have taken divergent views on whether insurance verification and preauthorization calls can constitute a promise to pay for purposes of contract creation. In *California Spine & Neurosurgery Institute v. United Healthcare Services,* No. 18-CV-2867 PSG (AFM), 2018 U.S. Dist. LEXIS 225961*, 2018 WL 6074567, at *8-*13 (C.D. Cal. June 28, 2018) ("*California Spine*"), the court found a plaintiff out-of-network provider adequately pled causes of action for breach of

oral contract and promissory estoppel based solely on a per-service verification of benefits phone call.

Just like the case at bar, in *California Spine* the insurance company defendant demurred to a breach of oral contract cause of action on the grounds that "even if a verification call *did* equate to consent to pay for services, there can still be no implied contract where the terms are too vague to give rise to a meeting of the minds." (*Id.* at \*9.) The court disagreed, finding the "facts alleged include specific names and dates of the calls between Plaintiff and Defendant regarding payment for Patient's services, what the services would be, what was said, and by whom—including that Defendant agreed to pay a specific price; 75% of the UCR rate[.]" (*Id.* at \*10-\*11.)

Here, the SAC alleges specific names and dates of the calls between Plaintiffs and Defendant regarding payment of out-of-network services, what those services would be, what was said, and by whom—including that Defendant agreed to pay the specific price of either 60% or 50% of the Allowable rate, after each patients' deductible was met, and that Plaintiffs understood Defendant's "Allowable" rate to be equivalent to the UCR rate, based on Plaintiffs prior history of dealing with Defendant since 2018, as well as the fact that Defendant acknowledges in written Explanation of Benefits ("EOB") and appeal determination correspondence that the rate of payment is equivalent to the UCR rate. (SAC ¶¶ 37, 51, 58, & 61.)

Defendant relies on two cases in which courts found insufficiently specific promises regarding payment. (*See Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200 ("*Pacific Bay*"); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co.* (C.D. Cal. 2007) 520 F.Supp.2d 1184, 1191-1192 ("*Tenet*"). Both opinions are distinguishable and not instructive to the present set of facts.

In *Pacific Bay*, the out-of-network provider's implied contract cause of action alleged only that it contacted Blue Shield and was told the patient "was insured,

6

covered, and eligible for coverage" and that plaintiff "was led to believe that it would be paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable, and customary charges." (*Pacific Bay*, 12 Cal.App.5th 200, 216.) There, the court found plaintiff's allegations lacked specific facts, including a description of the "type of treatment" or "any sort of agreement as to the rate Blue Shield would pay[.]" (*Ibid.*) These specific facts are *not* lacking in the present action.

In *Tenet*, the plaintiff out-of-network hospital sought to recover for medical services that it provided to defendant's insured prior to his death from AIDS-related complications. There, the plaintiff called the defendant insurance company to verify coverage *after* the patient had been admitted through the emergency room. (*Tenet*, 520 F.Supp.2d at 1190.) The insurance company played a prerecorded "pre-existing condition disclaimer" during the phone call and further advised that call did not constitute a guarantee of payment. (*Ibid.*) Defendant denied plaintiff's claim because pre-existing conditions were not covered under the insured's short term medical policy, and plaintiff filed suite for breach of implied contract on the grounds that defendant verified that the patient was eligible for benefits. (*Id.* at 1193.)

Critically, *Tenet* was decided on summary judgment, with the benefit of the parties' evidence and expert witness testimony regarding industry custom. An uncontroverted fact before the *Tenet* court was that "Plaintiff understood that Defendant might not pay the claim if it found the services were for a pre-existing condition, a determination that had not been made." (*Id.* at 1190.) The court therefore found plaintiff's claim for beach of an implied contract failed because the parties did not manifest an intent to enter into a contract. (*Id.* at 1193-1195.) None of these facts are before the court in the present action.

Defendant also cites to *Orthopedic Specialists of S. Cal. v. Cal. Pub. Emps. Ret. Sys.* (2014) 228 Cal.App.4th 644, 649. There, an out-of-network provider alleged causes of action for breach of implied and oral contract based on pre-service

7

communications with a health plan covered by defendant Public Employees' Retirement System (CalPERS). (*Id.* at 645-47.) The complaint alleged only that before treating the member, CalPERS informed plaintiff the member was "insured, covered, and eligible," and plaintiff "was led to believe that it would be paid either its total billed charges or the usual, customary and reasonable value of its total charges." (*Id.* at 646.) On these facts, the court doubted that an oral promise was created, but held it "need not reach the issue because, as the trial court correctly noted, an oral promise cannot be enforced against a government agency, like CalPERS." (*Id.* at 649.) This decision has no bearing on the present action.

Another opinion that is applicable to the factual allegations at bar is *In re Out of Network Substance Use Disorder Claims Against Unitedhealthcare*, No. SACV 19-2075 JVS (DFMx) 2020 U.S. Dist. LEXIS 81195*, 2020 WL 2114934, (C.D. Cal. Feb. 21, 2020), wherein the court denied defendant insurance company's motion to dismiss plaintiff out-of-network provider's breach of oral contract and promissory estoppel claims because it found the allegations plausibly described the services defendant agreed to pay. (*Id.* at *22.) Specifically, the court noted that "[a]s part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims," the defendants agreed to pay 70% of plaintiff's fully-billed charges. (*Ibid*.)

The same result was reached in *Bristol SL Holdings, Inc. v. Cigna Health Life Ins., Co.,* No. SACV 19-00709 AG (ADSx), 2020 U.S. Dist. LEXIS 76342, 2020 WL 2027955 (C.D. Cal. Jan. 6, 2020) ("*Bristol*"). The *Bristol* court found the provider plaintiff sufficiently alleged facts to state its breach of oral contract and promissory estoppel claims based on insurance verification and preauthorization phone calls. (*Id.* at *7-*11.) There, the defendant insurance company, Cigna, characterized the allegations as "nothing more than 'a recitation of the authorization

8

1   and verification process' and are insufficient as a matter of law to 'transform' those

2   phone calls 'into promises to pay or contracts.'" (*Id.* at *8 (citation omitted).)

3         The court rejected this argument, noting the allegations "go beyond a simple

4   pre-authorization or verification and the blanket guarantee that Cigna would cover

5   the treatment" because for each patient, plaintiff alleges what type of treatment was

6   being sought, and "further alleges a specific billing rate pegged to a percentage of

7   the usual, customary and reasonable rate[.]" (*Id.* at *9.) The court in the instant action

8   should reach the same result.

9         Based on the foregoing, Plaintiffs have sufficiently alleged that an oral

10   contract was formed between the parties and Defendant's Motion to Dismiss the

11   SAC's first cause of action should be denied.

12       **B.  <u>Plaintiffs' Promissory Estoppel is Adequately Pled.</u>**

13         A promise may be binding and enforceable, without consideration, under the

14   doctrine of promissory estoppel if: (1) the promise was one that the promisor should

15   have reasonably expected to induce action or forbearance of a definite and

16   substantial character on the part of the promisee; (2) the promise induced that action

17   or forbearance; and (3) injustice can be avoided only by enforcement of the promise.

18   (*C & K Eng'g Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 6.)

19         The SAC alleges that Defendant represented Plaintiffs would be paid for

20   services rendered to PATIENTS A-C at either 50% or 60% of the Allowable (i.e.

21   UCR) rate, and that Defendant should have reasonably expected that Plaintiffs would

22   in fact render services to Patients A-C expecting that payment would be made at the

23   rate verified telephonically prior to the dates of service. (SAC ¶¶ 68-70.) Plaintiffs

24   further allege they relied on Defendant's representations when rendering services

25   and suffered damages as a result of their detrimental reliance. (SAC ¶¶ 71-73.)

26         Defendant contends Plaintiffs' promissory estoppel claim fails for want of a

27   definite promise. (Motion at 9:2-4, 22-23.) However, as the court found in *California*

28

1    *Spine*, "a promise of payment at [a specified] rate is sufficiently clear and definite[]"

2    for a promissory estoppel claim to survive demurrer. (*California Spine,* 2018 U.S.

3    Dist. LEXIS 225961 at *12.) Indeed, "payors have long used words or combinations

4    of words such as ***usual, reasonable, customary*** and ***allowed***, to mean an average

5    payment for a procedure provided by similarly situated medical providers within

6    similarly situated areas or places of practice." (*Ibid.* (emphasis added).)

7         Moreover, Defendant specifically contends that the fact that Defendant quoted

8    out-of-network benefits at a percentage of the UCR does not equate to a promise to

9    pay a specific amount. (Motion at 9:2-4.) Not so. The UCR is a definable rate that

10   can be determined according to proof. Indeed, California Code of Regulation

11   1300.71(3)(B) defines the UCR rate as the payment of the reasonable and customary

12   value for the health care services rendered based upon statistically credible

13   information that is updated at least annually and takes into consideration: (i) the

14   provider's training, qualifications, and length of time in practice; (ii) the nature of

15   the services provided; (iii) the fees usually charged by the provider; (iv) prevailing

16   provider rates charged in the general geographic area in which the services were

17   rendered; (v) other aspects of the economics of the medical provider's practice that

18   are relevant; and (vi) any unusual circumstances in the case.

19        Finally, Plaintiffs' reliance was reasonable given the "commercial realities"

20   health care providers face. *Morris B. Silver M.D., Inc. v. International Longshore*

21   *and Warehouse Union—Pacific Maritime Association Welfare Plan* (2016) 206

22   Cal.App.5th 793, 804 ("*Morris*"). *Morris* involved an out-of-network provider's

23   breach of oral contract and promissory estoppel causes of action against an ERISA

24   health plan. The issue before the *Morris* court was whether the state law claims were

25   preempted by ERISA, however, the appellate court's analysis of the "commercial

26   realities" health care providers face is telling: "Health care is expensive, and

27   providers have limited budgets for indigent care and losses due to nonpayment. They

28

10

1   understandably need to determine before deciding to treat a patient whether they can

2   reasonably expect payment and must rely on insurance company or plan

3   administrator's representations." (*Ibid.* (citation omitted).)

4        Based on the foregoing, Plaintiffs alleged a sufficiently clear promise and

5   reasonable reliance to state a cause of action for promissory estoppel. Defendant's

6   Motion to Dismiss the SAC's second cause of action should be denied.

7        **C. <u>Plaintiffs' Misrepresentation Claims Are Adequately Pled.</u>**

8        An intentional misrepresentation claim must allege the following: "(a)

9   misrepresentation (false representation, concealment, or nondisclosure); (b)

10  knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

11  justifiable reliance; and (e) resulting damage.'" (*Engalla v. Permanent Medical*

12  *Group, Inc.* (1997) 15 Cal.4th 951, 974 (citation omitted) ("*Engalla*").) In addition,

13  claims for fraud are subject to heightened pleading standards and therefore the

14  allegations "must be accompanied by 'the who, what, when, where, and how' of the

15  misconduct charge." (*Vess v. Ciba-Geigy Corp. USA* (9th Cir. 2003) 317 F.3d 1097,

16  1104 (citation omitted).) The tort of negligent misrepresentation has similar

17  elements except that it "does not require scienter or intent to defraud." (*Small v.*

18  *Fritz. Cos., Inc.*, 30 Cal.4th 167, 173 (2003).)

19       Here, Defendant assured Plaintiffs they would be paid for out-of-network

20  services rendered to PATIENTS A-C at either 50% or 60% of the Allowable (i.e.,

21  UCR) rate. (SAC ¶¶ 75, 83.) Defendant further represented to Plaintiffs that there

22  were no preauthorization or precertification requirements to satisfy before

23  proceeding with the proposed services. (*Id.*) The SAC alleges these representations

24  were false because after services were rendered, Defendant either claimed: "the rates

25  we use to price or pay for services rendered by providers that do not participate in

26  our networks are based on the rates that are accepted by providers that do participate

27  in Anthem networks," which contradicts the pre-service representation that services

28

11

would be paid at a percentage of the Allowable or UCR rate; "the member's benefit office has overridden our allowance and is using their own pricing due to specific account requirements," but Defendant failed to disclose pre-service that the quoted payment rate could be overridden post-services; or that "program requirements identified by the members contract have not been fulfilled," which contradicts the pre-service representation that preauthorization was not required. (SAC ¶ 76, a.-g.)

The SAC further alleges that Defendant either knew the representations were false or made them recklessly and without regards for their truth. (SAC ¶¶ 77, 85.) This is because Defendant has the upper hand as the party privy to the patients' insurance policies. Defendant is not required to verify benefits or preauthorize services for out-of-network providers, but since it does, it assumes a duty to do so truthfully. "'[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered.'" (*Engalla,* 15 Cal.4th at 974.)

Finally, as addressed above, Plaintiffs' reliance was justifiable here given the "commercial realities" health care providers face. As one court reasoned in denying a defendant insurance company's motion to dismiss an out-of-network provider's misrepresentation claim based on pre-service communications, "[w]ithout any prospect of liability there would be no legal incentives for the [health] Plan to truthfully answer providers' inquiries regarding benefits provisions. And without any reasons to trust the Plan's assurances of coverage, those providers would be well-advised to treat only those beneficiaries who have the means to pay for medical services out-of-pocket[,]" which is contrary to public policy. (*Bay City Surgery Center, Inc. v. ILWU-PMA Welfare Plan Board of Trustees*, No. CV-15-06209-MWF-AFM, 2016 WL 11185297, at *10 (C.D. Cal. Mar. 25, 2016 ("*Bay City*")).)

This Court should conclude that Plaintiffs' allegations pass muster under Federal Rule of Civil Procedure 9(b) because the SAC pleads the who (Defendant's

12

individually named representatives), the what (false representations regarding coverage), the when (in 2019), the where (California), and the how (by misleading Plaintiffs into performing medical services). (*Id.* at *12.) These allegations satisfy heightened pleading requirements since they are "specific enough to give [D]efendant[] notice of the particular misconduct." (*Bly-Magee v. California* (9th Circ. 2001) 236 F.3d 1014, 1019.)

Accordingly, Defendant's Motion to Dismiss the SAC's third and fourth causes of action should be denied.

### D. Plaintiffs' Claim for Violation of UCL is Adequately Pled.

Business and Professions Code section 17204 permits "any person acting for the interests of itself, its members or the general public" to file an action for restitution against a person or entity alleged to be engaged in any "unlawful, unfair, or fraudulent business act or practice[.]" (Bus. & Prof. Code § 17200).

"Unlawful" business practices within the meaning of UCL include "anything that can properly be called a business practice that at the same time is forbidden by law." (*Id.* At 1474 (internal quotations and citation omitted.) Moreover, "[e]ven if the violation of another law does not create a private right of action, if the violation constitutes unfair competition, it is actionable." (*Id.* At 1475 (citation omitted).)

A business practice is "unfair" under section 17200 "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." (*McKell v. Wash. Mut. Inc.* (2006) 142 Cal.App.4th 1457, 1473.)

A "fraudulent" business practice under section 17200 is "one which is likely to deceive the public," and "may be based on representations to the public which are untrue, and also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." (*Id.* at 1471.)

13

The SAC alleges Defendant engaged in unlawful, unfair, and fraudulent business practices by misrepresenting policy terms and benefits promised thereunder. (SAC ¶¶ 90-94.) Plaintiffs were deceived by these practices. The SAC specifically cites to Defendant's violations of Insurance Code sections 780 and 790.03, and further alleges Defendant failed to include adequate explanations of its benefit determinations and issued unintelligible EOBs. (*Id.*)

For example, Defendant sent Plaintiffs EOBs stating, "program requirements as identified by the members contract have not been fulfilled," yet the EOBs provide no explanation of what the program requirements are or how to cure the allegedly defective claim. (SAC ¶¶ 37, 47, & 58.) In other instances, Defendant sent Plaintiffs EOBs with vague and ambiguous statements, such as, "charge exceeds the total number of units allowed when billed by the same provider, for the same patient, on the same date of service." (SAC ¶¶ 45, & 48.) The EOBs do not explain what "total number of units allowed" means, and Defendant failed to disclose this condition (whatever it may be) when Plaintiffs sought preauthorization.

Defendant contends Plaintiffs lack standing because they are not "powerless" or "unwary consumers." (Motion 14:4-6.) However, as noted above, Defendant has the upper hand as the party privy to the terms of the patients' insurance policies. Out-of-network providers, like Plaintiffs, routinely seek pre-service assurances from insurance companies, like Defendant, because the only other option is to demand full payment from patients upfront, which most patients with out-of-network coverage would never agree to.

And just because Plaintiffs are a medical corporation and facility, does not mean they are automatically too "sophisticated," as Defendant suggests, to be afforded UCL standing under these circumstances. (*Cf. Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 135.) Indeed, even when Plaintiffs attempt to get clarification from Defendant regarding benefit

14

determinations, they are either ignored or sent EOBs and correspondence with "explanations" that are certainly not plain language, which Plaintiffs contend are unintelligible and used for the very purpose of confusing or misleading Plaintiffs and causing unnecessary delay. (SAC ¶¶ 20-21, 28, 30, 35, 42-46, 49, 56, 89-93.)

Moreover, Plaintiffs separately have standing to bring a representative UCL action on behalf of their patients. "Where the UCL action is based on a contract, the representative plaintiff may seek to vindicate the rights of individual consumers who are parties to the contract." (*Rosenbluth Int'l v. Superior Court* (2002) 101 Cal.App.4th 1073, 1077 ("*Rosenbluth*".)

Here, Defendant and Plaintiffs' patients were parties to written insurance contracts, as confirmed by Defendant during insurance eligibility calls. Plaintiffs seek to vindicate the rights of their individual patients, who are otherwise left with substantial out-of-pocket responsibilities for medically necessary surgeries that Defendant represented were covered at a specific payment rate. (SAC ¶¶ 18-21, 27-32, 37, 43-51, 57-58.)

As the *Rosenbluth* court pointed out, "[w]here the subject of the action is an unlawful business practice or false advertising that harms individual consumers, the consumer/victims, powerless individually, may welcome the opportunity to have their rights vindicated in a representative action under the UCL." (*Id.* at 1077-78.) The present action is such a case.

Finally, Defendant contends the UCL claim fails because "the only remedy available to Plaintiffs is compensatory damages." (Motion at 14:13-15.) Not so. Plaintiffs seek restitution damages in connection with their UCL claim. (SAC ¶ 96; Prayer, ¶ 2.) Under Business and Professions code section 17203, an order for restitution is one "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those

15

claiming through that person." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1149 (internal quotes and citation omitted).) That is precisely the remedy sought here, as Defendant is wrongfully retaining payment from Plaintiffs that have an ownership interest through services rendered to their patients.

Based on the foregoing, Defendant's Motion to Dismiss the SAC's fifth cause of action should be denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the SAC should be denied entirely. Alternatively, if this Court finds any of Plaintiffs' allegations insufficient to state a claim, Plaintiffs respectfully request leave to amend because amendment would not be futile.

Dated:  December 20, 2021                              **ANGELO & WHITE**

By:  _/s/Alyssa Milman White_____
ALYSSA MILMAN WHITE, ESQ.
SARA L. ESCALANTE, ESQ.
Attorneys for Plaintiffs,
R&R SURGICAL INSTITUTE and
RAMIN M. ROOHIPOUR, M.D.,
INC.

16