Amir Shlesinger (SBN 204132)
ashlesinger@reedsmith.com
Michelle L. Cheng (SBN 239711)
mcheng@reedsmith.com
Charles P. Hyun (SBN 307817)
chyun@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  +1 213 457 8000
Facsimile:   +1 213 457 8080

Attorneys for Defendant
Health Care Service Corporation, a mutual legal reserve company, doing business in Illinois as Blue Cross and Blue Shield of Illinois

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| RAMIN M. ROOHIPOUR, M.D., INC., a California corporation; and R&R SURGICAL INSTITUTE, an unincorporated association;<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS, an Illinois Corporation; and DOES 1 through 20, inclusive;<br><br>Defendants. | Case No.:  2:21-cv-06434-DSF-GJS<br><br>**DEFENDANT HEALTH CARE SERVICE CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6)**<br><br>Date: January 10, 2022<br>Time: 1:30 p.m.<br>Location: Courtroom 7D<br><br>Hon. Dale S. Fischer<br>Removed: August 10, 2021<br>Complaint Filed: April 28, 2021<br>FAC Filed: July 11, 2021 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1
II. ARGUMENT .................................................................................................. 2
    A. Plaintiffs' Breach Of Oral Contract Claim Fails........................................ 2
    B. Plaintiffs' Promissory Estoppel Claim Similarly Fails.............................. 4
    C. Plaintiffs' Intentional And Negligent Misrepresentation Claims Should Be Dismissed .............................................................................................. 5
    D. Plaintiffs' UCL Claim Should Be Dismissed ............................................ 7
III. CONCLUSION ............................................................................................... 8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*California Spine & Neurosurgery Institute v. United Healthcare Services*,
 2018 U.S. Dist. LEXIS 225961, 2018 WL 6074567 (C.D. Cal. June
 28, 2018) ................................................................................................... 2, 3

*Cel-Tech*,
 20 Cal. 4th at 187 ............................................................................................ 7

*Champlaie v. BAC Home Loans Servicing, LP*,
 706 F. Supp. 2d 1029 (E.D. Cal. 2009) .......................................................... 6

*Day v. AT & T Corp.*,
 63 Cal. App. 4th 325 (1998) ........................................................................... 8

*Eddy v. Sharp*,
 199 Cal. App. 3d 858 (1988) .......................................................................... 5

*Hodsdon v. Mars, Inc.*,
 891 F.3d 857 ................................................................................................... 7

*Pac. Bus. Capital Corp. v. Globex Brands, Inc.*,
 2011 U.S. Dist. LEXIS 3335 (C.D. Cal. Jan. 7, 2011) ................................... 5

*Pacific Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
 12 Cal. App. 5th 200 (2017) ....................................................................... 3, 4

*Pemberton v. Nationstar Mortg. LLC*,
 331 F. Supp. 3d 1018 (S.D. Cal. 2018) .......................................................... 6

*Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*,
 715 F. Supp. 2d 1079 (E.D. Cal. 2010) .......................................................... 7

*Rosenbluth Int'l v. Superior Court*,
 101 Cal. App. 4th 1073 (2002) ....................................................................... 8

*Scognamillo v. Credit Suisse First Bos. LLC*,
 2005 U.S. Dist. LEXIS 20221 (N.D. Cal. Aug. 25, 2005) ..................... 4, 5, 7

*Stewart v. Preston Pipeline Inc.*,
 134 Cal. App. 4th 1565 (2005) ....................................................................... 3


Case 2:21-cv-06434-DSF-GJS Document 24 Filed 12/27/21 Page 4 of 13 Page ID #:272

*Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*,
  520 F.Supp.2d 1184 (C.D. Cal. 2007) .......................................................................... 6

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*,
  70 Cal. App. 4th 55 (1999) ........................................................................................ 7

*In re Yahoo! Litig.*,
  251 F.R.D. 459 (C.D. Cal. 2008) ............................................................................... 7

*Zhang v. Superior Ct.*,
  57 Cal. 4th 364, 304 P.3d 163 (2013) ....................................................................... 7

**Statutes**

Cal. Civ. Code § 1550 ..................................................................................................... 3

Cal. Civ. Code § 1565 ..................................................................................................... 3

– iii –

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Second Amended Complaint ("SAC") of Plaintiffs Ramin M. Roohipour, M.D., Inc. and R&R Surgical Institute ("Plaintiffs") fails to correct the deficiencies that led to the dismissal of the First Amended Complaint ("FAC"). The Opposition confirms that the "new allegations" in the SAC are insubstantial, and comprise of nothing more than a few swapped words and vague allegations regarding Plaintiffs' "experience" and "course of dealing." Critically missing from the SAC, however, are any new *facts* from which it can be inferred that Defendant Health Care Services Corporation ("HCSC") made a promise to pay Plaintiffs or that HCSC misrepresented anything regarding payment.

Plaintiffs primarily point to two "new allegations" that supposedly make their SAC sufficient to withstand the instant motion to dismiss. First, Plaintiffs point to allegations that they provided HCSC with diagnostic codes and the proposed surgical procedures for each patient during the course of their verification calls, and that HCSC purportedly "assured" Plaintiffs that preauthorization was not required. *See* Opp. at 4. Second, Plaintiffs point to allegations that they "understood" Defendants' allowable rate to be equivalent to the UCR rate based on a prior course of dealing. *See* Opp. at 6. However, critically missing from the SAC is any allegation that HCSC *promised to pay* at the rates supposedly determined during the verification calls. That is why the Court dismissed Plaintiffs' FAC, and Plaintiffs' superficial allegations do not change that result. In short, the SAC plainly lacks sufficient factual allegations to state any cause of action.

Similarly, the Opposition lacks any new argument or authorities that should cause the Court to depart from its prior order dismissing the FAC. Instead, Plaintiffs' Opposition brief sets forth the same arguments that the Court already rejected, and relies on the same legal authorities that the Court found to be inapplicable. For these reasons, HCSC's motion to dismiss should be granted with prejudice.

– 1 –
REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## II. ARGUMENT

### A. Plaintiffs' Breach Of Oral Contract Claim Fails

In dismissing Plaintiffs' FAC, the Court observed that "while Plaintiffs allege the existence of documents memorializing the information conveyed by representatives of HCSC on the verification calls, Plaintiffs do not allege additional details about the contents of those documents that would allow the Court to infer that HCSC agreed to be bound by the terms allegedly conveyed in the verification calls." Dkt. 16 at 8. Presumably in response to that observation, Plaintiffs point to allegations that they "provided Defendant with the diagnostic codes and proposed surgical procedures for each patient and Defendant assured Plaintiffs that none of the surgeries required preauthorization" and contend that these allegations support the formation of a contract. Opp. at 4; SAC ¶¶ 16, 25, 41, 55. These "new allegations" amount to nothing more than additional background information; they do not constitute additional details from which the Court can infer that HCSC agreed to be bound by any terms. Plaintiffs provide no explanation as to how the fact that *Plaintiffs* communicated diagnostic codes to HCSC constitutes a promise by *HCSC* to pay Plaintiffs at a certain rate.

As the Court recognized, the critical deficiency in the FAC was that Plaintiffs "do not allege HCSC made a *promise* to pay at the rates determined during the verification calls." Dkt. 16 at 8. That deficiency still exists in the SAC. Although there are new allegations regarding what was said by *Plaintiffs* on the alleged verification calls, there are no new allegations regarding what was *said by HCSC*. As such, there are no facts in the SAC from which it can be inferred that HCSC made a promise to Plaintiffs.

Next, Plaintiffs again rely on *California Spine & Neurosurgery Institute v. United Healthcare Services*, No. 18-CV-2867 PSG (AFM), 2018 U.S. Dist. LEXIS 225961*, 2018 WL 6074567, at *8-*13 (C.D. Cal. June 28, 2018) ("*California Spine*") for its contention that they have properly pled a cause of action for breach of

– 2 –

contract and promissory estoppel.  Opp. at 5-6.  The Court already rejected this argument, finding that "unlike the plaintiffs in *California Spine*, Plaintiffs here do not allege HCSC made a promise to pay at the rates determined during the verification calls." Dkt. 16 at 8.  Plaintiffs' new allegations here provide no basis for the Court to depart from its prior ruling.  In *California Spine,* plaintiff alleged that "Defendant agreed to pay a specific price: 75% of the UCR rate until Patient's [Max Out of Pocket] expense was met, and 100% of the UCR rate afterwards." *Id.* at *11.  Here, HCSC did not communicate a "promise to pay" any amount.

Plaintiffs contend that *California Spine* applies here because "Plaintiffs understood Defendant's 'Allowable' rate to be equivalent to the UCR rate, based on Plaintiffs prior history of dealing with Defendant since 2018, as well as the fact that Defendant acknowledges in written Explanation of Benefits ("EOB") and appeal determination correspondence that the rate of payment is equivalent to the UCR rate." Opp. at 6.  Not so.  There are no allegations in the SAC that HCSC stated on any verification call that "Allowable" rate equated to UCR.  And even if there were, there are certainly no allegations that HCSC communicated to Plaintiffs that *it would pay* Plaintiffs a certain percentage of UCR for the services rendered.  The formation of a contract requires mutual assent "*[c]ommunicated* by each to the other." Cal. Civ. Code §§ 1550, 1565; *see also Stewart v. Preston Pipeline Inc*., 134 Cal. App. 4th 1565, 1586 (2005) (a valid contract must contain mutual promises).

Nor do Plaintiffs' post hoc rationalizations that post-service EOBs and appeal correspondence equated the "allowable" rate to UCR cure the deficiencies in Plaintiffs' contract claim.  Plaintiffs cite no authority (presumably because there is none) supporting the proposition that post-services communications can retroactively form a contract and define payment terms.

What is more, *Pacific Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc. ("Pacific Bay")*, 12 Cal. App. 5th 200 (2017) foreclosed the very argument that Plaintiff makes here.  In *Pacific Bay*, the plaintiff alleged that it "was led to believe

– 3 –
REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1 that it would be paid a portion or percentage of its total billed charges, which charges correlated with usual, reasonable and customary charges." *Id.* at 216 (internal quotation marks omitted). The court held that no contract was formed because plaintiff's "allegations lack the specific facts required [] to determine there was any meeting of the minds between the parties" and "it does not appear the parties reached any sort of agreement as to the rate Blue Shield would pay Pacific Bay." *Id.* at 216. That is what Plaintiffs allege here. Again, there are no allegations that HCSC communicated it would pay a specified amount. Instead, Plaintiffs base their claim on their "prior course of dealing" with HCSC. In other words, Plaintiffs allege that their prior experience *led them to believe* they would be paid a percentage of the UCR amount. Such allegations are wholly insufficient to support a cause of action.

Finally, Plaintiffs newly allege a claim based on a $71,170 facility fee that was allegedly underpaid by $68,003.24. SAC ¶ 27. In dismissing the FAC, the Court *did not* grant leave to add new claims (Dkt. 16 at 13), and the Court should therefore dismiss any claims based on the new $71,170 facility fee claim. Plaintiffs' failure to respond to that argument should be construed as a concession of its merit and an abandonment of their claim. *See Scognamillo v. Credit Suisse First Bos. LLC*, No. C03-2061 TEH, 2005 U.S. Dist. LEXIS 20221, at *36 (N.D. Cal. Aug. 25, 2005).

Based on the foregoing, no contract was formed and Plaintiffs' claim should be dismissed with prejudice.

**B.    Plaintiffs' Promissory Estoppel Claim Similarly Fails**

For the same reasons that Plaintiffs' contract claim fails, Plaintiffs' promissory estoppel claim fails as well. Plaintiffs' additional allegations that they provided HCSC with the diagnostic codes during the verification calls, and that they believed "Allowable" amount to equate to UCR based on prior experience is insufficient to establish a clear and unambiguous promise for payment. *See Pacific Bay Recovery, Inc.*, 12 Cal.App.5th at 215 n.6 (noting that similar allegations did not state cause of action for promissory estoppel because the complaint did not allege a clear and

– 4 –

unambiguous promise). Further, given the ambiguous nature of the alleged promise, any reliance on the representations would necessarily be unreasonable.

Accordingly, because Plaintiffs have not alleged a definite and clear promise, or reasonable reliance, Plaintiffs' cause of action for promissory estoppel fails as a matter of law and should be dismissed with prejudice.

**C.  Plaintiffs' Intentional And Negligent Misrepresentation Claims Should Be Dismissed**

As a preliminary matter, Plaintiffs do not respond to HCSC's attack on their negligent misrepresentation claim. More specifically, Plaintiffs' Opposition fails to respond to the argument that Plaintiffs' negligent misrepresentation claim fails as a matter of law because the FAC does not allege the existence of a legal duty owed by HCSC. *See* Mot. at 11 (citing *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988) [negligent misrepresentation claim requires "the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person"]). Plaintiffs' failure to respond to that argument should be construed as a concession of its merit and an abandonment of their claim. *See Scognamillo,* 2005 U.S. Dist. LEXIS 20221, at *36.

In the Opposition, Plaintiffs contend that there are two categories of alleged misrepresentations that serve as the basis for their claims: that Plaintiffs would be paid "at either 50% or 60% of the Allowable (i.e., UCR) rate"; and that "there were no preauthorization or precertification requirements to satisfy before proceeding with the proposed services." Opp. at 11.

As to the first category of alleged misrepresentation, Plaintiffs' claims are premised on the same allegations as their deficient contract-based claims, and therefore fail for this reason alone. *See* SAC ¶¶ 75, 83; *see also Pac. Bus. Capital Corp. v. Globex Brands, Inc.*, 2011 U.S. Dist. LEXIS 3335, at *6 (C.D. Cal. Jan. 7, 2011) (declining to enter default judgment on fraud claim because it was merely "an attempted repackaging of [plaintiff's] breach of contract claim"). Furthermore, as

– 5 –
REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

established above, there are no allegations that HCSC made any representation regarding payments to Plaintiffs. HCSC did not state or represent to Plaintiffs that "Allowable" rate equated to UCR, or that it would pay Plaintiffs at that rate. Also explained above is that Plaintiffs' claim is premised on their *own* belief that the amount of payment is inconsistent with *their* expectation based on *their* experience. Plaintiffs fail to explain how *their own* unexpressed expectation of payments supports a claim that *HCSC* made a misrepresentation about payment. Because the parties did not engage in any discussion and HCSC did not make any representations as to how or what Allowable rate means during the alleged verification calls, Plaintiffs cannot now complain that they were misled because of their undisclosed prior "experience."

With respect to the second category of alleged misrepresentation, Plaintiffs fail to explain why HCSC's alleged representation that there were no preauthorization or precertification requirements was false. Courts recognize that authorization is merely "the process in which the health insurer confirm[s] that the treatment requested [is] medically necessary and appropriate." *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F.Supp.2d 1184, 1193 (C.D. Cal. 2007). Here, the services requested by the patients at issue were indeed provided. That Plaintiffs were not paid the amount they *subjectively believed* they should be paid is an entirely separate issue, and as discussed above, insufficient to support a cause of action. As such, there was no misrepresentation regarding authorization requirements.

Although the lack of an actual misrepresentation is dispositive as to Plaintiffs' claims, Plaintiffs' misrepresentation claims additionally fail for failure to allege scienter or reliance. As discussed in the moving papers, a bare recitation of elements is insufficient to support a fraud claim. *See Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1046 (S.D. Cal. 2018) ("[p]laintiffs must still plead facts establishing scienter with the plausibility standard required under Rule 8(a)"). And conclusory allegations of reliance are insufficient to meet the specificity require by Rule 9(b). *See Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029,

– 6 –
REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1058 (E.D. Cal. 2009). Accordingly, Plaintiffs misrepresentation claims fail under either pleading standard.

For these reasons, Plaintiffs' negligent and intentional misrepresentation claims should be dismissed.

### D. Plaintiffs' UCL Claim Should Be Dismissed

In dismissing the FAC, the Court held that Plaintiffs failed to identify any conduct that is "sufficiently 'tethered' to a legislative policy for the purposes of the unfair prong." Dkt. 16 at 12 (citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857 at 866 (citing *Cel-Tech*, 20 Cal. 4th at 187). Plaintiffs' Opposition makes no effort to show that their UCL claim is sufficiently tethered to any legislative policy. In the moving papers, HCSC explained how Plaintiffs' reliance on California Insurance Code §§ 780 and 790.03 could not support a UCL claim. Mot. at 13 (citing *Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 715 F. Supp. 2d 1079, 1091 (E.D. Cal. 2010); *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 384, 304 P.3d 163, 177 (2013)). Plaintiffs do not respond to this argument at all, and thus appear to have abandoned their UCL claim under the "unfair" prong. *See Scognamillo,* 2005 U.S. Dist. LEXIS 20221, at *36. To the extent Plaintiffs' UCL claim is based on the "unlawful" prong, *Raisin Bargaining* and *Zhang* establish that such a claim cannot be premised on the California Insurance Code. To the extent Plaintiffs' UCL claim is based on the "fraudulent" prong, Plaintiffs' claim fails because, as discussed above, they fail to state a claim for fraud.

Apart from the deficiency of the underlying claims upon which the UCL claim is derived, Plaintiffs' UCL claim is deficient for two reasons: (1) Plaintiffs, as sophisticated parties, lack standing to assert a UCL claim; and (2) the UCL does not permit recovery of compensatory damages. *See In re Yahoo! Litig.,* 251 F.R.D. 459, 475 (C.D. Cal. 2008) (holding that sophisticated consumers lack standing to bring a UCL claim); *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 67 (1999) (holding that the UCL only allows for equitable relief).

In response, Plaintiffs contend that they separately have standing to bring a

– 7 –
REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

representative UCL action on behalf of their patients, citing to *Rosenbluth Int'l v. Superior Court*, 101 Cal. App. 4th 1073 (2002). This makes no sense, as Plaintiffs do not purport to bring a representative action (*see generally* SAC), and as such this contention should be rejected out of hand.

Plaintiffs also do not dispute that compensatory damages are not available under the UCL. *See* Opp. at 15-16. Plaintiffs instead contend that they are entitled to restitution and "[t]hat is precisely the remedy sought here, as Defendant is wrongfully retaining payment from Plaintiffs that have an ownership interest through services rendered to their patients." Opp. at 15-16. Plaintiffs cite no authority for the proposition that the alleged wrongful retention of payment can serve as the basis for a restitution remedy. To the contrary, restitution under the UCL "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice." *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 339 (1998). Here, Plaintiffs allegedly provided services to patients insured by HCSC. Plaintiffs contend that they are entitled to additional payment for those services rendered. There is no measurable amount that was allegedly "taken" by HCSC, and as such, restitution is not the appropriate remedy.

For these reasons, Plaintiffs' UCL claim should be dismissed with prejudice.

### III. CONCLUSION

Based on the foregoing reasons, HCSC respectfully requests that Plaintiffs' SAC be dismissed. Plaintiffs' have had ample opportunity to amend their complaint to state a viable cause of action but have been unable to do so. Accordingly, the dismissal of the SAC should be with prejudice.

DATED: December 27, 2021

REED SMITH LLP

By: */s/ Amir Shlesinger*
Amir Shlesinger
Michelle L. Cheng
Charles P. Hyun
Attorneys for Defendant Health Care Service Corporation, a mutual legal reserve company, doing business in Illinois as Blue Cross and Blue Shield of Illinois